**UNITED STATES**

v.

**Staff Sergeant Charlie L. COHEN, FR 587–05–9450 United States Air Force.**

**ACM 23172.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 29 June 1981.

Decided 6 Oct. 1981.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Douglas H. Kohrt.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before HODGSON, POWELL and MILLER, Appellate Military Judges.

DECISION

HODGSON, Chief Judge.

Consistent with his pleas, the accused was convicted of larceny in excess of $12,600, in violation of Article 121, 10 U.S.C. § 921, Uniform Code of Military Justice. As the result of a negotiated plea the approved sentence extended to a bad conduct discharge, confinement at hard labor for 18 months, forfeiture of $250 per month for 18 months, and reduction to airman basic.

The evidence at trial disclosed that on 10 February 1981, the accused was the NCOIC of Document Security. His duties included the responsibility for security of all controlled official mail on Clark Air Base, Republic of The Philippines. When mail containing checks came to the base, it was sent to Central Base Administration and from there to Document Security where a receipt for the checks was made. The checks were delivered to the payees who signed a receipt

for them. Mail containing deposits for the credit union or banking facility were handled the same way. The mail containing checks can be easily recognized.

During the first week in February, the accused was approached by a Filipino named "John-John" who suggested that he had a "buyer" for any checks the accused could obtain. The accused's share of the proceeds was to be determined by later discussions. He did not know exactly how "John-John" was going to dispose of the checks.

On 10 February 1981, the accused was helping "sort" the mail when he saw envelopes containing checks. He took the envelopes from their bin and put them in the safe. He later retrieved them from the safe and hid them in his socks under his pants leg.

As he left the building he was arrested and four letters containing five checks were removed from his socks. The payees on the checks were private individuals and various federal credit unions.

During the *Care*[1] inquiry, the accused related fully how he took the letters and how he knew they contained checks. He set out in detail his meeting with "John-John", and his understanding of their arrangement. He told of the need for money, and how "John-John" suggested getting the checks would satisfy that need.

Based upon the above facts appellate defense counsel have assigned the following errors:

I

THE APPELLANT'S PLEA OF GUILTY WAS IMPROVIDENT SINCE THE CHECKS WHICH THE APPELLANT WAS CHARGED WITH STEALING WERE NOT THE PROPERTY OF THE UNITED STATES AS CHARGED.

■ It is well settled law that ownership may be alleged in either the real owner or the person who possessed the property at the time of the theft and who had a greater

right to the property than the thief. 50 Am.Jur.2nd, Section 132; *see also State v. Schmidt*, 30 N.W.2nd 473, 239 Iowa 440 (1965). The military rule is the same. Manual for Courts-Martial, United States, 1969 (Revised edition), para. 200a(3). [Hereinafter cited as MCM 1969 (Rev.)]

■ Appellate counsel citing *United States v. Leslie*, 9 M.J. 646 (N.C.M.R.1980) a case also involving larceny, contend that the United States was neither the general nor special owner of the checks and therefore the plea was improvident. Their reliance on *United States v. Leslie, supra* is misplaced. In the cited case the author judge held that the monies never became the property of the United States. He further found that the United States never had *actual possession* of the funds involved. That is not the factual situation in the case, *sub judice*. Here the checks were clearly in the possession of the United States at the time the accused took them. Further, two of the three Navy appellate judges concluded ". . . that the United States had a superior right to the possession of the money" and they would have affirmed the conviction on that basis. The decision of the trial court was reversed because one appellate judge concurred in the result of the principal opinion based on an unrelated issue.

The checks under review clearly were the property of the United States. *United States v. Higdon*, 2 M.J. 445 (A.C.M.R.1975); see also *United States v. Waldron*, 35 C.M.R. 611, Aff'd 15 U.S.C.M.A. 628, 36 C.M.R. 126 (C.M.A.1965). Accordingly, this assignment of error must fail.

II

THE APPELLANT'S PLEA OF GUILTY WAS IMPROVIDENT SINCE THE ELEMENT OF THE APPELLANT'S INTENT TO STEAL WAS NOT ESTABLISHED DURING THE *CARE* INQUIRY.

■ Appellate counsel urge that the mandate announced in *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247

1. 18 U.S.C.M.A. 535, 40 C.M.R. 247 (C.M.A. 1969).

(C.M.A.1969) was not met and that the accused did not acknowledge his criminal intent. They offered the following exchange between the military judge and the accused as being indicative of this failure.

> MJ: What was your intent? What did you plan to do with those checks?
>
> ACC: I wasn't really sure, sir. I had had a gesture from a Filipino national to give them to him.
>
> MJ: You had what?
>
> ACC: A gesture from a Filipino national to give them to him.
>
> MJ: Oh, some Filipino wanted you to give him the checks?
>
> ACC: Yes, sir.

We are not persuaded by this argument and do not read into this exchange a negation of the intent to permanently deprive the United States of the property. An intent may be inferred from a wrongful and intentional dealing with the property of another in a manner likely to cause permanent loss. MCM 1969 (Rev.), para. 200a(6). The accused throughout the record acknowledged his part in the scheme, and was aware of what his accomplice was to do with the checks once he got them. The factual information elicited during the *Care* inquiry was consistent with the accused's plea. Giving property that's stolen to a third party for disposition is a clear indication of an intent to permanently deprive the owner of the property. The accused never disavowed any essential element of the offense, and no inconsistent matter was raised during the inquiry. *United States v. King*, 6 M.J. 927 (A.F.C.M.R.1979). The plea was provident.

For the reasons discussed above the findings of guilty and the sentence are

Affirmed.

POWELL, Senior Judge, and MILLER, Judge, concur.