## UNITED STATES

v.

**Airman Basic Charles D. ALEXANDER, FR 271–60–9792, United States Air Force.**

**ACM 26829.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 1 April 1988.

Decided 5 Aug. 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Frank J. Spinner.

Appellate Counsel for the United States: Colonel Joe R. Lamport and Lieutenant Colonel Robert E. Giovagnoni.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

The appellant claims that the evidence supporting his conviction[1] for cocaine abuse was improperly obtained by the government after he had voluntarily sought assistance for his drug problem. See Air Force Regulation 30–2, 18 April 1986, *Social Actions Programs*, para. 4–2 et seq [hereinafter AFR 30–2].

The parties at trial joined in a stipulation of fact outlining the circumstances that uncovered the evidence on which the government's case is based. It was this stipulation that the trial judge relied upon in denying the appellant's suppression motion.

The agreed to facts established that the appellant told his immediate supervisor he needed time off to go to the base law enforcement office to pay a fine for an on-base speeding violation. After the appellant was directed to report to the first sergeant to clarify the story, it was discovered that he had fabricated the security police ticketing incident in order to get some time off. That same day, 21 December 1987, the appellant's commander, for reasons not stated in the record, directed the appellant to provide a urine sample for drug testing purposes; the first sergeant took the appellant to the base hospital where this was accomplished. On 10 February 1988, this "command directed" urine sample was found to be positive for the presence of cocaine metabolites.

On 28 December 1987, a week after the speeding ticket episode, the appellant was summoned to his commander's office for notification of the latter's intention to impose non-judicial punishment for the speeding ticket incident. The appellant appeared for the appointment unshaven, and when asked about his condition, indicated he had a shaving waiver. After being told to see the first sergeant with the waiver, he left. He returned approximately 30 minutes later, and informed the first sergeant that

1. The appellant entered a conditional guilty plea to two allegations of using cocaine during the periods 19–28 December 1987, and 25 January —3 February 1988. [Specifications 1 and 2, Charge I]. Additionally, he unconditionally pleaded guilty to multiple allegations of forgery and larceny. See R.C.M. 910(a)(2); *United States v. Forbes*, 19 M.J. 953 (A.F.C.M.R.1985).

"he had a bad drug problem and needed help." The first sergeant informed the commander of the situation and the latter, after consulting the base legal office, determined that the appellant should be interviewed by the Office of Special Investigations (OSI). Thereafter, the appellant was taken by the first sergeant to their office for an interview which terminated with the appellant consenting to provide a urine sample for drug testing analysis. This specimen later tested positive for cocaine metabolites. The appellant was not under investigation for drug abuse prior to his interview by the OSI.

Later that same day, the appellant was sent to the Social Actions office for evaluation. This resulted in him being diagnosed as a drug user and entered into the drug rehabilitation program commencing with a five day in-patient hospitalization followed by continuing out-patient counselling.

On the morning of 3 February 1988, the appellant, while still in out-patient status, appeared at the base Social Actions office and again asked for help. He stated he had been off base the evening before and spent all his money on drugs. He did not have the money to pay the taxi fare.

The Social Actions office called the OSI, and the appellant was once more taken to their office for an interview. Again he was asked to provide a urine sample to which he agreed. This sample also tested positive for cocaine metabolites.

The urine samples provided by the appellant on 28 December 1987, and 3 February 1988, together with statements he made to OSI agents after being questioned on those dates, formed the prosecution's case against him for drug abuse.

In opposing the appellant's motion to suppress the 28 December and 3 February test results, the trial counsel argued that the "appellant had not taken the necessary steps to avail himself of the protections of AFR 30–2."

■ We find the arguments made at trial by the prosecutor and adopted by appellate government counsel on appeal to be without merit. For example, the government claims that since the appellant's commander did not state *in writing* that he was granting the appellant protection under the self-identification program, the latter cannot claim refuge under its umbrella. *See* AFR 30–2, para. 4–2b(1). This overlooks the fact that the appellant was *taken* by the first sergeant to the Social Actions office where he was evaluated and found to be a drug abuser. Later, he was hospitalized for treatment. Further, trial counsel's assertion in argument opposing the suppression motion that the appellant's commander had not granted self-identification protection is not evidence of this fact. *See United States v. Barbeau,* 9 M.J. 569 (A.F. C.M.R.1980). Since the stipulation of fact is silent on this point, we will assume the commander complied with the governing regulation to achieve the goals of the drug rehabilitation program.

■ Next, the government argues that the "command-directed" drug testing of the appellant on 21 December 87, was based on the latter's "false statements and aberrant behavior ... during the preceding ten days." Again the government's position is supported by argument only and not by evidence in the record. *United States v. Barbeau, supra.* The government also maintains that since the appellant had already provided a urine sample on 21 December, albeit "command-directed," he was ineligible for the self-identification program on 28 December, because he was under *investigation* for drug abuse on that date. *See* AFR 30–2, para. 4–2b(1)(A). Again the government's argument appears to be out-of-step with not only the spirit but the letter of the Air Force's drug rehabilitation program. First, results obtained from a command-directed urine testing *may not* be used against a member in any disciplinary action under the UCMJ. *See* AFR 30–2, para. 5–8b. Second, a member is considered under investigation for drug abuse only when the appropriate initial case entry is made in a Security Police blotter or in the Security Police Investigator's Log of Cases, or when the commander has requested an investigation according to AFR 124–4. *See* AFR 30–2, para. 4–

2b(1)(a) and (2). There is no evidence in this record of such action.

The government builds on the argument stated above by urging that the self-identification program should not apply to a servicemember who has provided a "command-directed" urine sample because his self-disclosure would not be an attempt to seek help, since it could be concluded that he knew his urine sample would be positive. Therefore his self-disclosure was an attempt to game the system and avoid punishment. Under this logic no one with a drug problem could qualify for the self-identification program because he or she would just be coming forward to escape a random urinalysis.

■ The appellant's statement to the first sergeant on 28 December, that he "needed help" with his drug problem qualified him for protection under the self-identification program so that the evidence obtained from him on that date is inadmissible. *See* AFR 30–2, 4–2(1). There is no question but the appellant used drugs after his entry into the Drug Abuse Control Rehabilitation Program. However, any disciplinary action under the UCMJ for drug abuse under these circumstances must be based "on independently derived evidence." *See* AFR 30–2, 4–2b(3)(b). In this context we interpret the phrase "independently derived evidence" as that coming from a source other than the accused. *See United States v. Littlehales,* 19 M.J. 512 (A.F.C.M. R.1984); *aff'd* 22 M.J. 17 (C.M.A.1986); *cert. denied* 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986). We do not consider an accused's statement admitting drug use or the results of a test of his urine to be "independently derived evidence" within the meaning of this term and under the facts of this case.

For the reasons stated, Charge I and two specifications hereafter are set aside and dismissed. *See generally United States v. Martinez,* ACM 25681, 19 June 1987; *pet. granted* 26 M.J. 63 (C.M.A.1988) (Whether the military judge erred in admitting evidence derived from appellant's efforts to obtain help in overcoming his cocaine addiction under the AFR 30–2 self-identification program). Reassessing the sentence on the basis of the error noted and the entire record, we find appropriate only so much thereof as provides for a bad conduct discharge, confinement for 18 months, and total forfeitures. The findings of guilty and the sentence, both as modified, are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.